UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSE TERRY, TERRY WATT, ROY PARNELL, JOHANNA GUYTON, LUISA and JORGE BOLO, SELVIN and BEATRICE QUIRE, JUAN BAEZ and CRUZ RIVERA and JULIE NORADIN<br><br>Plaintiffs,<br><br>vs.<br><br>AMERIQUEST MORTGAGE COMPANY, AMERIQUEST CAPITAL CORPORATION, ACC CAPITAL HOLDINGS, INC., AMERIQUEST MORTGAGE SECURITIES, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY, DAWN ARNALL and WAYNE LEE<br><br>Defendants. | No.<br><br>FILED: APRIL 30, 2008<br>08CV2475     PH<br>JUDGE COAR<br>MAGISTRATE JUDGE MASON<br><br><br>JURY TRIAL DEMAND |

## COMPLAINT

### INTRODUCTION

1. Plaintiffs seek rescission of their mortgage transactions pursuant to 15 U.S.C. § 1635. Plaintiffs also charge defendants with violation of Illinois law.

### JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiffs' claims under the Truth in Lending Act arise under federal law. This Court has supplemental jurisdiction over plaintiffs' claims under state law pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because plaintiffs' claims arose here. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest before Judge Aspen.

## PARTIES

4. Plaintiffs are home owners who refinanced their mortgages with Ameriquest Mortgage Company and are creditors of Ameriquest Mortgage Company.

5. Defendant Ameriquest Mortgage Company originated plaintiffs' mortgages in connection with the refinancing transaction and took a security interest in plaintiffs' homes.  Upon information and belief, defendant Deutsche Bank National Trust Company is the owner/assignee of plaintiffs' mortgages. Ameriquest Capital Corporation, ACC Capital Holdings, Inc., Ameriquest Mortgage Securities, Inc., Deutsche Bank National Trust Company, knowingly participated in and aided and abetted Ameriquest's violations of plaintiffs' rights under State law.  Ameriquest Capital Corporation, ACC Capital Holdings, Ameriquest Mortgage Securities, Roland Arnall, Dawn Arnall and Wayne Lee are also transferees of fraudulent conveyances from Ameriquest Mortgage Company.

## COUNT ONE -- TRUTH IN LENDING ACT

6. Plaintiffs incorporate paragraphs one through five above.

7. Ameriquest's disclosures to plaintiffs in connection with plaintiffs' mortgage refinancing transactions did not comply with the requirements of the Truth in Lending Act. More specifically, the disclosures were deficient as follows:

8. The Notice of Right to Cancel forms that were delivered to Rose Terry at the closing did not set forth the date that the rescission period expired, which is a violation of 12 C.F.R. § 226.23(b)(1)(v). Also, Ms. Terry was given a document which indicated that she would owe $200 for an Appraisal/Property Valuation Fee Deposit, if she backed out of the deal, which misrepresented the effects of rescission in violation of 12 C.F.R. § 226.23(b)(1)(iv).  In addition, Ms. Terry was misinformed as to the cost of credit and payment schedule in that she was told she would be getting a fixed rate loan when, in fact, she was given an adjustable rate mortgage.

9. The Notice of Right to Cancel forms that were delivered to Terry Watt and Roy Parnell at the closing did not set forth the date that the rescission period expired, which is a violation of 12 C.F.R. § 226.23(b)(1)(v).  Also, Terry Watt was told that she would owe $350 for an Appraisal/Property Valuation Fee Deposit, if she backed out of the deal, a misrepresentation of the effects of rescission in violation of 12 C.F.R. § 226.23(b)(1)(iv). Terry Watt and Roy Parnell were also misled as to the cost of credit in that the closing costs turned out to be higher than previously represented.

10. The Notice of Right to Cancel forms that were delivered to Johanna Guyton at her May 2005 closing did not set forth the date that the rescission period expired, which is a violation of 12 C.F.R. § 226.23(b)(1)(v). Also, Ms. Guyton was given a document which indicated that she would owe $500 for an Appraisal/Property Valuation Fee Deposit, if she backed out of the deal, which misrepresented the effects of rescission in violation of 12 C.F.R. § 226.23(b)(1)(iv).  In addition, Ms. Guyton was misinformed as to the cost of credit in that she was originally told that her interest rate would be something like 5%, but ended up with an initial interest rate 10.600%, with a maximum possible rate of 16.600%.

11. The Notice of Right to Cancel forms delivered to Ms. Guyton at her December 2005 closing were on H-8 forms, rather than H-9 forms as should have been provided.  Also, Ms. Guyton was given two documents, misrepresenting the effects of rescission in violation of 12 C.F.R. § 226.23(b)(1)(iv).  One of which said she would owe a $475 appraisal fee deposit if she backed out of the deal.  The other said she would owe a $700 appraisal fee deposit if she backed out of the deal.  Ms. Guyton was also misinformed as to cost of credit.  According to the good faith estimate, her fees and points were supposed to be $11,319.45, in fact they were $15,210.78, on a loan with a maximum possible interest rate of 14.500%.

12. The Notice of Right to Cancel form that was delivered to Luisa Bolo and Jorge Bolo at the closing did not set forth the date that the rescission period expired, which is a violation of 12 C.F.R. § 226.23(b)(1)(v).  Moreover, Ameriquest only delivered one copy of the Notice of Right to Cancel form to the Bolos, which is a separate violation of TILA. See 12 C.F.R. § 226.23(b)(1).

13. In addition, the Bolos were misinformed as to the cost of credit and payment schedule in that they were told that they would be getting a fixed rate loan when, in fact, they were given an adjustable rate mortgage.

14. The Notice of Right to Cancel form that was delivered to Selvin Quire and Beatrice Quire at the closing did not set forth the date that the rescission period expired, which is a violation of 12 C.F.R. § 226.23(b)(1)(v).  Ameriquest also violated 12 C.F.R. §226.18 by including the "Padding at 3%" in the amount financed, rather than the finance charge. This misclassification resulted in understatement of the applicable finance charge and the APR.

15. Also, an Ameriquest representative told Beatrice Quire that the Quires would owe $350 for an appraisal if they backed out of the deal, misrepresenting the effects of rescission in violation of 12 C.F.R. § 226.23(b)(1)(iv).

16. The Notice of Right to Cancel form that was delivered to Juan Baez and Cruz Rivera at the closing did not set forth the date that the rescission period expired, which is a violation of 12 C.F.R. § 226.23(b)(1)(v).  The notice of right to cancel forms delivered to Mr. Baez and Ms. Rivera at the April 2005 closing were on H-8 forms, rather than H-9 forms as should have been provided.

17. Ameriquest gave Juan Baez and Cruz Rivera a document (APPLICATION DISCLOSURE) which stated that he was being charged $207 for an appraisal/property valuation and that this "deposit is refundable only if the loan is denied or withdrawn prior

to the Lender ordering the appraisal/property valuation." This statement contradicted plaintiff's right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiff tried to cancel the transaction, Ameriquest misrepresented plaintiff's rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv).

18. Julie Noradin entered into her first refinancing transaction with Ameriquest on May 11, 2005  At the closing on May 11, 2005  Ms. Noradin received five Notice of Right to Cancel forms. One of the Notice of Right to Cancel forms listed the document signing date of "5-10-05" and the final date to cancel as "5-13-05." Another Notice of Right to Cancel form listed the document signing date as "5" and the final date to cancel "5-1(illegible mark)-05." Ms. Noradin also received three copies of the Notice of Right to Cancel form that did not set forth the date that the rescission period expired. None of the Notice of Right to Cancel forms left with Ms. Noradin provided her with two copies of a document that clearly and conspicuously disclosed her rescission rights in violation of 12 C.F.R § 226.23(b)(1).

19. At the closing on  the May 11, 2005, Ameriquest gave Julie Noradin a document (APPLICATION DISCLOSURE) which stated that he was being charged $207 for an appraisal/property valuation and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation." This statement contradicted plaintiff's right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains

that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiff tried to cancel the transaction, Ameriquest misrepresented plaintiff's rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv).

20. Julie Noradin refinanced again with Ameriquest on April 25, 2006. The Notice of Right to Cancel forms left with Ms. Noradin at the closing did not set forth the date that the rescission period expired, which is a violation of 12 C.F.R. § 226.23(b)(1)(v). The notice of right to cancel forms delivered to Ms. Noradin at the April 2006 closing were on H-8 forms, rather than H-9 forms as should have been provided.

21. Ms. Noradin was once again given a document which indicated that she would owe $207 for an Appraisal/Property Valuation Fee Deposit, if she backed out of the deal, which misrepresented the effects of rescission in violation of 12 C.F.R. § 226.23(b)(1)(iv).

22. Under the Truth in Lending Act, if the rescission disclosures or material TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

23. Ameriquest's rescission and material TILA disclosures were defective. Accordingly, plaintiffs are entitled to rescission of their mortgage transactions.

**COUNT TWO -- VIOLATION OF ILLINOIS CONSUMER FRAUD ACT**

24. Plaintiffs (except Julie Noradin) incorporate paragraphs one through twenty-three above.

25. In connection with trade or commerce, Ameriquest made false and misleading statements to the plaintiffs (except Julie Noradin) intending to induce reliance. Ameriquest baited plaintiffs into a mortgage transaction by offering a relatively favorable set of terms and then switched to more expensive terms. More specifically, plaintiffs were misled as

follows:

26. In or about May 2005, an Ameriquest representative told Rose Terry that she would be getting a fixed rate mortgage with an interest rate between 7% and 8%.  In fact, Ms. Terry received an adjustable rate mortgage with a maximum possible rate of 13.850%.

27. In or about, October 2005, an Ameriquest representative told Terry Watt to expect closing costs of about $10,000, in fact they were closer to $12,000.

28. In or about May 2005, an Ameriquest representative told Johanna Guyton that her interest rate would be something like 5%, but instead she ended up with an initial interest rate 10.600%, with a maximum possible rate of 16.600%.

29. In or about December 2005, Ameriquest provided Johanna Guyton with a good faith estimate for a new loan which projected fees and points of $11,319.45.  In fact they were $15,210.78, on a loan with a maximum possible interest rate of 14.500%.

30. In or about June 2005, an Ameriquest representative told Luisa Bolo that she would be getting a fixed rate mortgage with an interest rate of 6.25%.  In fact, the Bolos received an adjustable rate mortgage with an initial interest rate of 6.200% and a maximum possible rate of 12.200%.

31. In or about June 2005, an Ameriquest representative told Beatrice Quire that she would be getting a fixed rate mortgage with an interest rate between 8% and 9%.  In fact, the Quires received an adjustable rate mortgage with an initial interest rate of 9.100% and a maximum possible rate of  15.100%.

32. Ameriquest's false and misleading statements to plaintiffs violated plaintiffs' rights under the Illinois Consumer Fraud Act.

33. Ameriquest's false and misleading statements deceived plaintiffs and proximately caused them injury.

34. Ameriquest's violation of plaintiffs' rights was part of a pattern and practice of illegal

behavior by Ameriquest. Defendants Deutsche Bank, Ameriquest Capital Corporation, ACC Capital Holdings and Ameriquest Mortgage Securities knowingly participated in and aided and abetted this pattern and practice of illegal behavior and are therefore also liable to plaintiffs.

## COUNT THREE – FRADULENT CONVEYANCE

35. Plaintiffs incorporate paragraphs one through thirty-four above.

36. Ameriquest Mortgage Company has been insolvent for at least four years, in that the value of its assets has been exceeded by the value of its contingent liabilities.

37. Despite its insolvency, Ameriquest has transferred money or property to affiliates and insiders (both directly and indirectly) without receiving adequate consideration in return. The recipients of these fraudulent conveyances include defendants Ameriquest Capital Corporation, ACC Capital Holdings, Ameriquest Mortgage Securities Inc., Wayne Lee and Dawn Arnall.

38. Ameriquest has also made transfers for the purpose of hindering creditors. For example, Ameriquest (acting through Ameriquest Capital Corporation) transferred $35 million to Wayne Lee in exchange, inter alia, for his promise not to disparage Ameriquest by revealing its insolvency and fraud on creditors.

39. Defendants Ameriquest Capital Corporation, ACC Capital Holdings, Ameriquest Mortgage Securities, Wayne Lee and Dawn Arnall have conspired with Ameriquest and others to have money or property transferred from the company for the purpose of hindering its creditors.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

    a.    canceling defendants' security interest in plaintiffs' homes and ordering

defendants to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. § 226.23(d)(2);

    b.    ordering defendants to pay costs, penalties, and attorneys fees;

    c.    awarding the plaintiffs actual and punitive damages;

    d.    avoidance of the transfer of funds to Ameriquest Capital Corporation, ACC Capital Holdings, Ameriquest Mortgage Securities, Dawn Arnall and Wayne Lee

    e.    imposition of a constructive trust on the funds transferred to Ameriquest Capital Corporation, ACC Capital Holdings, Ameriquest Mortgage Securities, Dawn Arnall and Wayne Lee

    f.    entry of a temporary restraining order, and preliminary and permanent injunction, restraining defendants from further transfers or encumbrances of any other asset that in law or in equity is or ought to be subject to the plaintiffs' claims.

    g.    granting such other relief as the Court deems just and proper.

Date: April 30, 2008        Respectfully submitted by:

    /s/ Anthony P. Valach, Jr.
    Counsel for the Plaintiffs

    THE LAW OFFICES OF DANIEL HARRIS
    Daniel Harris
    Anthony Valach
    150 N. Wacker Dr., Suite 3000
    Chicago, IL 60606
    Telephone: (312) 960-1802
    Facsimile: (312) 960-1936