**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROSE TERRY, TERRY WATT, ROY PARNELL, JOHANNA GUYTON, LUISA and JORGE BOLO, SELVIN and BEATRICE QUIRE, JUAN BAEZ and CRUZ RIVERA and JULIE NORADIN,<br><br>               Plaintiffs,<br><br>v.<br><br>AMERIQUEST MORTGAGE COMPANY, AMERIQUEST CAPITAL CORPORATION, ACC CAPITAL HOLDINGS, INC., AMERIQUEST MORTGAGE SECURITIES, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY, DAWN ARNALL and WAYNE LEE,<br><br>               Defendant. | Case No. 08 CV 2475<br><br>Honorable David H. Coar<br><br>**DEFENDANTS AMERIQUEST MORTGAGE COMPANY'S, AMERIQUEST CAPITAL CORPORATION'S, ACC CAPITAL HOLDINGS, INC.'S, AND AMERIQUEST MORTGAGE SECURITIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS AMERIQUEST
MORTGAGE COMPANY'S, AMERIQUEST CAPITAL CORPORATION'S, ACC
CAPITAL HOLDINGS, INC.'S, AND AMERIQUEST MORTGAGE SECURITIES,
INC.'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)
FOR FAILURE TO STATE A CLAIM**

**INTRODUCTION**

Plaintiffs entered into loan agreements with Defendant Ameriquest Mortgage Company ("Ameriquest"), and are now suing Ameriquest over those agreements. However, they also purport to allege a wide variety of fraudulent conduct with respect to Ameriquest without providing factual allegations sufficient to support those claims. Plaintiffs also attempt to convert their claim against Ameriquest into claims against several other defendants, without citing any facts or law to support those claims. Plaintiffs' claims are deficient in the following respects:

- Plaintiffs fail to allege any facts whatsoever to support their allegations that Ameriquest Capital Corporation ("ACC"), ACC Capital Holdings, Inc. ("ACCCH"), and Ameriquest Mortgage Securities ("AMS") are liable for

1

violations of the Truth in Lending Act ("TILA").  Count I should be dismissed as to these three entities.

- Plaintiffs fail to allege any facts to support their pure legal conclusion in Count II that ACC, ACCCH, and AMS conspired with Ameriquest to violate the Illinois Consumer Fraud Act.  Count II should be dismissed as to these entities.

- Count III should be dismissed because its allegations lack the specificity required by Rule 9.  Additionally, ACC, ACCCH, and AMS are not "debtors," as that term is used in the Illinois Uniform Fraudulent Transfer Act ("IUFTA").  For these reasons, Count III must be dismissed as to Ameriquest, ACC, ACCCH, and AMS.

## STATEMENT OF FACTS

Plaintiffs entered into mortgage loan transactions with Ameriquest between May of 2005 and March of 2006.  (*See* Amended Complaint at ¶¶ 4-25).  Plaintiffs allege that Ameriquest did not provide them with properly completed Notice of Right to Cancel forms as mandated under TILA.  (*See id.* at ¶¶ 98-186).  Plaintiffs also allege that Ameriquest violated the Illinois Consumer Fraud Act by misleading Plaintiffs with respect to their final loan terms.  (*See* Amended Complaint, ¶¶ 188-208).  Plaintiffs do not allege that ACC, ACCCH, or AMS had any involvement in the origination of the subject loans.  Nor do they set forth any facts to support their claim that these entities conspired with Ameriquest to defraud plaintiffs.  (*See* Amended Complaint at ¶¶ 187-211).

Plaintiffs further allege that Ameriquest, ACCCH, AMS, and ACC engaged in various fraudulent conveyances.  Plaintiffs state the legal conclusion that Ameriquest, ACCCH, and AMS participated in fraudulent conveyances to a group of "parent companies and insiders," but again, no supporting facts are pled.  (*See* Amended Complaint, ¶ 248).  Plaintiffs do not allege what was transferred, when it was transferred, or how it was transferred.  (*Id.* at ¶¶ 212-293).  Plaintiffs also allege that ACC made a transfer to ACCCH CEO Wayne Lee on June 30, 2005 and additional transfers to Mr. Lee in the first half of 2007.  (*Id.* at ¶¶ 225, 230).

BN 2216060v1

## ARGUMENT

To state a claim in federal court, a plaintiff must "give the defendant … the grounds upon which it rests." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quotation omitted). Federal courts require "more than … merely creat[ing] a suspicion of a … cause of action," and more than stating "a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 127 U.S. 1955, 1965 (2007) (citations omitted). To the contrary, a plaintiff needs to allege "enough facts to state a claim to relief that is plausible on its face." *See Heisner v. Genzyme Corp.*, No. 08-C-593, 2008 WL 2940811, at *2 (N.D. Ill. July 25, 2008) (Coar, J.) (quoting *Twombly*) (attached as Exhibit A).

Further, all averments of fraud, and the circumstances constituting fraud, must be stated with particularity. Fed. R. Civ. P. 9(b); *Boyd Machine and Repair Co., Inc. v. D & L Indus. Servs., Inc.*, 100 F. Supp. 2d 898, 900 (N.D. Ill. 2000). This rule requires plaintiffs to perform a sufficient investigation into their fraud allegations before filing their complaint. *Id.* at 900. Plaintiffs must "state 'the who, what, when, where, and how.'" *E.g., Boyd Machine and Repair Co.*, 100 F. Supp. 2d at 900 (citing to *DiLeo v. Ernest & Young*, 901 F.2d 624, 628 (7th Cir. 1990). This rule applies to allegations of fraudulent conveyances. *See General Elec. Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997); *see also Colman v. Greenfield*, 05 C 3894, 2005 WL 2592538, *5 (N.D. Ill. Oct. 11, 2005) (finding that plaintiff failed to meet the particularity requirements of Rule 9(b) in alleging fraudulent conveyance) (attached as Exhibit B).

## I.    COUNT I SHOULD BE DISMISSED AS TO ACC, ACCCH, AND AMS BECAUSE PLAINTIFFS HAVE MADE NO ALLEGATIONS AS TO THESE ENTITIES.

Count I alleges various violations of the Truth In Lending Act. However, Count I does not set forth any facts that would support a TILA claim against ACC, ACCCH, and AMS. Indeed, Plaintiffs do not even mention these three entities in Count I. Accordingly, Count I should be dismissed as to these entities.

## II.    COUNT II SHOULD BE DISMISSED AS TO ACC, ACCCH, AND AMS BECAUSE PLAINTIFFS' ALLEGATIONS LACK THE REQUISITE PARTICULARITY.

In Count II, Plaintiffs allege a violation of the Illinois Consumer Fraud Act ("ICFA"). This claim should be dismissed as to ACC, ACCCH, and AMS because Plaintiffs plead nothing more than stark legal conclusions to support their claim.  To succeed on their ICFA claim, Plaintiffs must now plead and later prove: 1) a deceptive act or practice by the defendant; 2) the defendant intended that the plaintiff rely on the deception; 3) the deception occurred in the course of conduct involving trade or commerce; 4) the plaintiff suffered actual damage; and 5) the damage was proximately caused by the deception. *Geschke v. Air Force Ass'n*, 425 F.3d 337 (7th Cir. 2005) (citing *Oliveira v. Amoco Oil. Co.,* 776 N.E.2d 151, 160 (2002)).  Of the 25 paragraphs in Count II, only one *even mentions* ACC, ACCCH, or AMS:

> Ameriquest's violation of plaintiffs' rights was part of a pattern and practice of illegal behavior by Ameriquest.  Defendants Deutsche Bank, [ACC, ACCCH, and AMS] knowingly participated in and aided or abetted this pattern and practice of illegal behavior and are therefore also liable to plaintiffs.

(Amended Complaint, ¶ 209).  This allegation is nothing more than "a legal conclusion couched as a factual allegation." *Twombly*, 127 U.S. at 1965.  It does not allege "enough facts to state a claim to relief that is plausible on its face."  *See Heisner*, 2008 WL 2940811, at *2.  Where a defendant is sued under a theory that it participated in a fraudulent conspiracy or scheme with a multitude of parties, the pleading rules "not only require notice of the activities complained of, but also, where multiple defendants are alleged to have participated in the fraud, reasonable notice of the part each defendant is to have played in the scheme." *Adair v. Hunt Int'l Resources Corp.*, 526 F. Supp. 736, 744-45 (N.D. Ill. 1981) (citing to *Lincoln National Bank v. Lampe*, 414 F.Supp. 1270, 1278 (N.D.Ill.1976)).  Because Plaintiffs have not pled any facts whatsoever demonstrating the "what, when, where, and how" of ACC, ACCCH, and AMS' participation in the alleged fraud, this Court should dismiss Count II as to them.  *Boyd Machine and Repair Co.*, 100 F. Supp. 2d at 900.

## III.　　COUNT III SHOULD BE DISMISSED IN ITS ENTIRETY.

Count III, alleging various fraudulent conveyances, should be dismissed in its entirety.  It suffers from the following defects:

- Plaintiffs' allegations of fraudulent conveyances against Ameriquest, ACCCH, and AMS lack particularity.

- Plaintiffs do not allege that ACC, ACCCH, and AMS are debtors of the plaintiffs, as they must in order to recover under a fraudulent conveyance theory.

- Plaintiffs fail to allege that conveyances were undertaken with a specific intent to disturb, delay, hinder or defraud Plaintiffs from maintaining a claim.

- Certain Plaintiffs fail to allege that their claims existed at the time the alleged conveyances were made.

### A.　　Plaintiffs Fail To Plead Their Fraudulent Conveyance Claim with Particularity as to Ameriquest Mortgage Company, ACCCH, and AMS.

In Count III, Plaintiffs allege that Ameriquest, ACCCH, and AMS engaged in fraudulent conveyances.  Plaintiffs' claims as to ACCCH and AMS are patently insufficient, as they fail to identify either entity as being involved in any allegedly fraudulent conveyance. Plaintiffs' allegations concerning Ameriquest also fail.  Allegations of Ameriquest's purported fraudulent conveyance are limited to only four paragraphs of the Complaint – Paragraphs 248, 280, 281 and 282.  These allegations simply do not provide the "who, what, when, where, and how" that is required for allegations of fraud.  *E.g., Boyd Machine and Repair Co.*, 100 F. Supp. 2d at 900; *see also Colman*, 2005 WL 2592538, at *5 (N.D. Ill. Oct. 11, 2005).  In particular, Plaintiffs do not allege "who" specifically received the transfers; they merely allege that a group of "parent companies and insiders" were involved in the transfers.  (*See* Amended Complaint, ¶ 248.) Plaintiffs also fail to identify "what" was transferred in each transaction, alleging only "monies and/or other assets" were transferred between the parties.  (Amended Complaint, ¶ 280.)  They also fail to provide any specific facts as to "when" these allegedly fraudulent transfers were made.  And finally, they fail to plead with any specificity "how" the alleged fraud was

5

perpetrated – they merely conclude that Ameriquest made some transfers of money and property to affiliates and insiders. These pleading deficiencies alone mandate dismissal of Count III as to Ameriquest, ACCCH, and AMS.

    **B.**    **Plaintiffs Fail To Plead That ACC, ACCCH, And AMS Are Debtors of The Plaintiffs.**

Under Illinois law, a claim for fraudulent transfer "requires a debtor/creditor relationship." *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 629 (7th Cir. 2002); *A.P. Properties, Inc. v. Goshinsky,* 714 N.E.2d 519, 522 (Ill. 1999) ("Stated simply, the Act requires a debtor/creditor relationship.") Under the IUFTA, a "debtor" is a person who is liable on a claim. *See* 740 ILCS 160/2 (f). The term "claim" is defined as the "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 740 ILCS 160/2(c). The owner of a "debtor" corporation does not become a debtor itself simply through the fact of ownership. *APS Sports Collectibles*, 299 F.3d at 629 (holding that while a debtor corporation who had contracted with the plaintiff and committed the acts in breach of the contract could be held liable under a fraudulent conveyance theory, shareholders of the corporation who were not parties to any of the contracts at issue could be considered debtors of the plaintiff).

Given that ACC, ACCCH, and AMS are not liable for the acts of Ameriquest Mortgage Company and there is no allegation of ACC's, ACCCH's, and AMS' independent liability under TILA or the Illinois Consumer Fraud Act, Plaintiffs do not have a "claim" against these entities. Without a claim, ACC, ACCCH, and AMS cannot be considered debtors of the Plaintiffs. Without this debtor/creditor relationship, Plaintiffs cannot challenge any conveyances made by ACC, ACCCH, and AMS. For this reason alone, Plaintiffs' claim for fraudulent conveyance against ACC, ACCCH, and AMS must fail as matter of law.

**C.     Plaintiffs Fail To Allege That Conveyances Were Undertaken With A Specific Intent To Disturb, Delay, Hinder Or Defraud Plaintiffs From Maintaining A Claim.**

To allege a claim under Section 5(a)(1) of the IUFTA, Plaintiffs must allege and prove a *specific intent* to disturb, delay, hinder or defraud Plaintiffs. *Liquidation of MedCare HMO, Inc.*, 294 Ill. App. 3d 42, 52 (1997). As to Ameriquest, ACCCH, and AMS, Count III makes no reference to these parties' specific intent whatsoever. Indeed, Count III does not even identify a specific conveyance involving these entities. For these reasons alone, the portion of Count III alleging a violation of Section 5(a)(1) should be dismissed as to them.

As to ACC, Count III contends that ACC fraudulently conveyed funds to Wayne Lee. (*See* Amended Complaint, ¶ 231.) This allegation, however, does not relate to how the conveyance was specifically intended to disturb, delay, hinder, or defraud Plaintiffs' ability to recover on any future debts. Instead, this allegation, and the remaining allegations in the Third Count, focuses on a fraudulent scheme by "Ameriquest" to provide false information in its sale of mortgage loans to investors. (*See id.* ¶¶ 232-244.) Consequently, the portion of Count III alleging a violation of Section 5(a)(1) should be dismissed as to ACC as well.

**D.     Most, If Not All, Of Plaintiffs' Claims Under Section 6 Of the UFTA Fail To Allege That Their Claims Arose Before The Alleged Transfers Took Place.**

In Count III, Plaintiffs purport to allege a violation of Section 6 of the UFTA. In order to succeed on such a claim, Plaintiffs must plead and prove that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose *before the transfer was made or the obligation was incurred* . . . " 740 ILCS 160/6 (emphasis added). Thus, Plaintiffs must plead and prove that their claim arose *before* the challenged transfer. With respect to Ameriquest, ACCCH, and AMS, Plaintiffs fail to allege that their claims arose before any allegedly fraudulent transfers involving these entities. Indeed, as explained in Part II, *infra*, Plaintiffs fail to provide *any information whatsoever* concerning the dates of these alleged

7

transfers.  Accordingly, the portion of Count III relating to Section 6 should be dismissed as to these defendants

With respect to ACC, Plaintiffs allege that on June 30, 2005, ACC conveyed $20 million to Wayne Lee.  (*See* Amended Complaint, ¶ 225.)  Based on this date, however, only a handful of the Plaintiffs in this action can establish that their claim existed when this transfer was made. The Amended Complaint admits that the following Plaintiffs cannot state a claim under Section 6(a) for this particular conveyance because their claims arose *after* June 30, 2005:  Watt/Parnell (Amended Complaint,, ¶ 5); Guyton (Amended Complaint, ¶ 7); Noradin (Amended Complaint, ¶ 11); Colister (Amended Complaint, ¶ 13); Cox/Lawrence (Amended Complaint, ¶ 14); Favela (Amended  Complaint,  ¶  15);  Garcia/Lara  (Amended  Complaint,  ¶  16);  Hill  (Amended Complaint, ¶ 17); Jaime, (Amended Complaint, ¶ 18); Lee, whose claim arose on January 10, 2006 (Amended Complaint, ¶ 20); Monson (Amended Complaint, ¶ 21); Mueller (Amended Complaint, ¶ 22); Neeley (Amended Complaint, ¶ 23); Puga (Amended Complaint, ¶ 24); Shew (Amended Complaint, ¶ 25); Wells (Amended Complaint, ¶ 26).  Given that these Plaintiffs' claims did not exist at the time the alleged conveyance to Mr. Lee occurred, they cannot allege a claim against ACC under Section 6(a) of the IUFTA.

## CONCLUSION

For  the  foregoing  reasons,  Defendants  respectfully  request  that  this  Court  dismiss  the Complaint in its entirety as to Defendants Ameriquest Capital Corporation, ACC Capital

Holdings, and Ameriquest Mortgage Securities, Inc, and that it dismiss Counts II and III as to

Defendant Ameriquest Mortgage Company.

DATED:  August 28, 2008                    Respectfully submitted,

By: /s/  Joanne N. Davies

*Attorneys for Defendants Ameriquest Mortgage Company; Ameriquest Capital Corporation; ACC Capital Holdings, Inc.; and Ameriquest Mortgage Securities, Inc.*

Joanne N. Davies (admitted *pro hac vice*)
Buchalter Nemer
18400 Von Karman Ave., Ste. 800
Irvine, California 92612-0514
Telephone: (949) 760-1121
Facsimile:  (949) 720-0182

**CERTIFICATE OF SERVICE**

I, Joanne N. Davies, hereby certify that on this 28th day of August 2008, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


By:  _____/s/  Joanne N. Davies_____

BN 2216060v1

This document was created with Win2PDF available at http://www.daneprairie.com.
The unregistered version of Win2PDF is for evaluation or non-commercial use only.

EXHIBIT "A"



Slip Copy
Slip Copy, 2008 WL 2940811 (N.D.Ill.)

Page 1

**C**Heisner ex rel. Heisner v. Genzyme Corp.
N.D.Ill.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Elmer HEISNER, individually and on behalf of Jayne
HEISNER, Plaintiff,

v.

GENZYME CORPORATION, a Massachusetts
corporation, Defendant.
**No. 08-C-593.**

July 25, 2008.

Kurt D. Hyzy, The Law Group, Ltd., Chicago, IL, for
Plaintiff.
Stephanie Ann Scharf, David W. Austin, Schoeman
Updike Kaufman & Scharf, Chicago, IL, for
Defendant.

### *MEMORANDUM OPINION AND ORDER*

DAVID H. COAR, District Judge.
*\*1* Plaintiff Elmer Heisner ("Plaintiff" or "Heisner")
brought this action against Defendant Genzyme
Corporation ("Genzyme" or "Defendant") for
violations of state law surrounding the death of his
wife, Jayne Heisner ("Decedent"). Now before this
Court is Defendant's motion to dismiss pursuant to
Federal Rule of Civil Procedure 12(b)(6) (Docket No.
8). For the reasons stated below, Defendant's motion
is GRANTED.

### 1. FACTS[FN1]

> FN1. These facts are derived from Plaintiffs'
> complaint and, for the purposes of this
> motion, are assumed to be true. *See Davis
> Companies v. Emerald Casino, Inc., 268
> F.3d 477, 479 (7th Cir.2001).*

As an initial matter, Defendant requests that this
Court take judicial notice of the fact that "Seprafilm
is a Class III device approved through the PMA
[premarket approval] process."(Def.'s Reply at 2-4.)
The Complaint references Seprafilm's approval by
the FDA on December 20, 2000, but does not make

clear what approval process or category was applied
to the device.

It is certainly possible to "take judicial notice of
matters of public record without converting the
12(b)(6) motion into a motion for summary
judgment."*Anderson v. Simon,* 217 F.3d 472, 474-75
(7th Cir.2000) (citing *Henson v. CSC Credit Servs.,*
29 F.3d 280, 284 (7th Cir.1994)). However, this can
be done only where "an undisputed fact in the public
record establishes that the plaintiff cannot satisfy the
12(b)(6) standard."*Gen. Elec. Capital Corp. v. Lease
Resolution Corp.,* 128 F.3d 1074, 1081 (7th
Cir.1997).

Plaintiff argues against taking judicial notice of facts
surrounding the FDA's approval, stating that
"disputable findings exist concerning the Defendant's
compliance with the FDA's Medical Device
Amendments (MDA) and Premarket approval
process in the manufacturing of their product,
Seprafilm."(Pl.'s Resp. at 3.) However, this does not
contradict the putative fact in question, which is only
that the FDA approved Seprafilm as a Class III
device pursuant to the PMA process. Whether that
process was properly followed by the FDA, or
whether Defendant fulfilled its obligations over the
course of that process, are disputed issues that cannot
be resolved at this early stage. However, neither of
these questions contradict the clear, undisputed, and
publicly available fact put forward by Defendant; that
the FDA approved Seprafilm as a Class III device. As
a matter of law, this approval is granted only upon
completion of the PMA process. *See*21 U.S.C. §
360c(a)(1)(C). Therefore, this Court takes judicial
notice of the fact that "Seprafilm is a Class III device
approved by the FDA pursuant to the PMA process,"
and leaves open any additional questions regarding
the adequacy of that process as applied in this case.

Plaintiff's wife underwent surgery to remove an
ovarian cyst on January 19, 2006. A Seprafilm
adhesion barrier manufactured and sold by the
Defendant was inserted into her body to prevent post-
surgical adhesions from forming between her internal
organs and tissue. Plaintiff alleges that Jayne Heisner
died on February 22, 2006 as a proximate result of
the insertion of Seprafilm into her body. (Compl.¶ 2.)

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                            Page 2
Slip Copy, 2008 WL 2940811 (N.D.Ill.)

**\*2** Plaintiff's Complaint contains seven counts, generally alleging that Genzyme was negligent in the design, manufacture, and labeling of Seprafilm and that Seprafilm was not fit for its intended use. Defendant has moved to dismiss all seven counts of the Complaint. In his Response to the Defendant's Motion to Dismiss, Plaintiff has asked this Court to dismiss without prejudice Count II, which claimed a failure to disclose under Massachusetts General Law Ch. 93A § 2(a). (Pl.'s Resp. to Def.'s Mot. to Dismiss 14-15.) Dismissal of Count II is GRANTED without prejudice. The remaining counts are:

I. Breach of Implied Warranty of Merchantability under Massachusetts General Law § 2-314.

III. Strict Liability under Illinois tort law, as product was unreasonably dangerous for normal use.

IV. Negligence under Illinois tort law in testing, inspection, design, manufacture, warning, and/or labeling.

V. Negligence *per se* under Illinois tort law due to adulteration and/or misbranding in violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, the Sherman Food, Drug and Cosmetic Law, and "other applicable laws, statutes, and regulations," including standards for care and labeling set by 21 C .F.R. §§ 201.56 and 201.57.

VI. Breach of Express Warranty under Illinois tort law

VII. Breach of Implied Warranty under Illinois tort law

## 2. STANDARD OF REVIEW FOR MOTION TO DISMISS

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), courts take the allegations in the complaint as true, drawing all possible inferences in favor of the plaintiff.*Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 618 (7th Cir.2007).

To state a claim under federal pleading standards, a plaintiff need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to provide the defendant with "fair notice" of the claim and its basis. Fed.R.Civ.P. 8(a)(2); *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). In *Twombly,* however, the Supreme Court seemingly raised the level of factual development required to state a claim, requiring a complaint to contain more than "labels and conclusions," *id.* at 1964-65, and "enough facts to state a claim to relief that is plausible on its face,"*id.* at 1974.

The Seventh Circuit has emphasized that *Twombly*"did not ... supplant the basic notice pleading standard."*Tamayo v. Blagojevich,* No. 07-2975, 2008 WL 2168638, at \*8 (7th Cir. May 27, 2008). The essential requirement of a complaint remains, that it "give the defendant sufficient notice to enable him to begin to investigate and prepare a defense."*Id.* But after *Twombly,* the Seventh Circuit has also recognized that "the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."*Airborne Beepers & Video, Inc. v. AT & T Mobility, L.L.C.,* 499 F.3d 663, 667 (7th Cir.2007); *Killingsworth,* 507 F.3d at 619.

## 3. ANALYSIS

**\*3** Defendant has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) that advances several arguments for judgment as a matter of law, including: (1) federal preemption of state law claims pursuant to § 360k (seeking dismissal of all counts); (2) failure to state a claim for negligence per se (Count V); (3) failure to identify an express warranty (Count VI); (4) lack of duty to warn (all counts); (5) improper use of conclusions rather than facts (all counts); and (6) terminal failure to satisfy requirements of the Illinois Wrongful Death Act (multiple counts).

a. *Preemption*

i. *Law of the FDCA*

The primary issue now before this Court is whether any of Plaintiff's claims are preempted under the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Medical Device Amendments (MDA) to the federal Food, Drug, and Cosmetic Act (FDCA).21 U.S.C. § 360c et seq. The MDA established a regulatory structure pursuant to which the Food and Drug Administration (FDA) regulates medical devices. Under the MDA, devices are categorized into three classes, based on the level of risk that they pose. Devices used "in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health" are classified as Class III devices.Id. § 360c(a)(1)(C). A Class III device is required to undergo a premarket approval (PMA) process "to provide reasonable assurance of its safety and effectiveness" before being marketed. Id. During the PMA process, manufacturers must submit detailed information regarding the safety and efficacy of their devices, which the FDA thoroughly reviews. Medtronic, Inc. v. Lohr, 518 U.S. 470, 477, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). The FDA must approve the product's design, testing, intended use, manufacturing methods, performance standards, and labeling. Mitchell v. Collagen Corp., 126 F.3d 902, 913 (7th Cir.1997). The device in question in this case, Seprafilm, received PMA as a Class III device on December 20, 2000. (See Compl. ¶ 12; discussion supra p. 1.)

The MDA contains a preemption clause meant to displace state regulations that conflict with requirements imposed by the FDA. The clause states that:

[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement

(1) which is different from, or in addition to, any requirement applicable under this chapter to this device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). The initial interpretive questions raised by the preemption clause involve the meaning of the word "requirement": (1) whether the federal process or action constitutes a "requirement" imposed by the FDA; and (2) whether state statutes

and state tort law impose different and additional "requirements" on manufacturers. If the FDA and state statutory and tort duties both constitute "requirements," then § 360k may dictate that the state requirements be preempted by those imposed by the FDA. Lohr, 518 U.S. at 477. If the state requirement creates obligations that are "different from, or in addition to" the relevant federal requirements, then § 360k necessitates preemption. McMullen v. Medtronic, Inc., 421 F.3d 482, 488 (7th Cir.2005). However, tension between FDA requirements and those created by state law is avoided where the state requirements parallel the federal ones.Riegel, 128 S.Ct. at 1011 (declining to address, in the first instance, whether plaintiffs' claims were "parallel" to federal requirements); Lohr, 518 U.S. at 496-497 (holding that state requirements that are "substantially identical to" those imposed by the MDA are not preempted).

*4 The Supreme Court recently applied the preemption analysis to the PMA process in Riegel v. Medtronic, holding that the specific approval of a device's design and implementation amounts to the imposition of federal requirements, and that both state statutes and state tort duties may be requirements within the meaning of § 360k(a).--- U.S. ----, ---- - ----, 128 S.Ct. 999, 1007-8, 169 L.Ed.2d 892 (2008).Riegel involved a number of New York statutory and tort law claims brought against the manufacturer of a balloon catheter that had received PMA. Given the potentially conflicting requirements of the state laws and the PMA process, the Court held that the latter preempted the plaintiff's claims of implied warranty of merchantability, strict liability, and negligence. Id. at 1008-9.

ii. Party positions

Defendant argues that all six of the remaining counts of the Complaint are preempted pursuant to § 360k(a). (Def.'s Dismiss Mem. at 4-7.) In response, Plaintiff attempts to find loopholes in the holding of Riegel.(See Pl.'s Resp. to Def.'s Mot. to Dismiss 4-8.) Plaintiff first notes that manufacturers are required to inform the FDA, under 21 U.S.C. § 360(i), of any new clinical studies or of incidents of death or serious injury related to medical devices that have received PMA. (Id. at 5-6.)Plaintiff seems to suggest that, because Genzyme may have failed to meet these reporting requirements, this Court should not accept

Genzyme's contention that Seprafilm is an approved Class III device that has met the requirements of the MDA.

Plaintiff also contends that his claims "parallel" the PMA requirements and Good Manufacturing Practice requirements that specify regulations in regard to the manufacturing, design, packaging, labeling, marketing and distribution of medical devices. 21 U.S.C. §§ 360(e, j, contract); 21 C.F.R. § 820.1. Therefore, Plaintiff argues, his claims should not be preempted for imposing different or additional requirements. (Pl.'s Resp. to Def.'s Mot. to Dismiss 6-8.)

### iii. Discussion

Defendant overstates the holding of *Riegel* in arguing that it settles all questions of preemption in this case. It is true that Plaintiff's claims in this case are similar to those that were found, in *Riegel*, to constitute different and additional requirements. The plaintiffs in *Riegel* alleged that a balloon catheter"was designed, labeled, and manufactured in a manner that violated New York common law."128 S.Ct. at 1001. They made claims of strict liability, breach of implied warranty, and negligence in the design, testing, inspection, distribution, labeling, marketing, and sale of the catheter. *Id.* In the instant case, Plaintiff similarly alleges that Seprafilm was negligently designed, manufactured, and labeled. (Compl.¶¶ 20, 34, 39.) Like the plaintiffs in *Riegel*, he makes claims of strict liability, breach of implied warranty, and negligence. (*Id.* ¶¶ 20, 34, 39.)However, the *Riegel* court expressly declined to address the question of whether the claims were sufficiently "parallel" as to avoid preemption, because the plaintiff had failed to raise this issue before the court of appeals or in their petition for certiorari. 128 S.Ct. at 1011. In addition, *Riegel* does not delve into the compatibility of FDCA preemption and state law claims based on the post-approval reporting requirements of 21 U.S.C. § 360i.

**\*5** Here, there is at least some possibility that Seprafilm's failure might be attributed to Defendant's negligence in a way that does not conflict with the FDA's requirements. *See, e.g., Mitchell,* 126 F.3d at 907 ("[T]o the extent that the Mitchells' claims for mislabeling, misbranding and adulteration alleged that Collagen had not followed the FDA requirements, the claims were not preempted

because, in permitting a cause of action for non-conformity with federal requirements, state law did not impose a requirement 'different from, or in addition to,' the federal requirements.") (summarizing a previous ruling); *Riegel,* 128 S.Ct. at 1001. As Defendant acknowledges, to the extent that Plaintiff's allegations are concerned not with the nature of Seprafilm as approved by the FDA, but rather with Defendant's action or inaction in its efforts to take part in the PMA process or implement its results, he may be able to satisfy the parallel exception to preemption. (*See* Def.'s Reply at 5 ("An exception [to preemption] is when claims are premised on violations of the federal requirements embodied in the PMA process specific to the challenged device.") (citing *Riegel,* 128 S.Ct. at 1011).)

Whatever merit there may be to Plaintiff's argument regarding parallel requirements, however, the Complaint cannot be saved as it is now formulated. This Court cannot possibly determine whether Plaintiff's claims are based on requirements that are "substantially identical" to those of the FDA without a more precise statement of his claims. *See Lohr,* 518 U.S. at 496-497. As currently pled, each and every count brought by Plaintiff relies either directly or indirectly on the existence of a "defect" in Seprafilm. (*See* Compl. ¶¶ 19-20, 34, 39, 46, 50, 55.) However, if the referenced defect was in fact intrinsic to the product as approved in the PMA, then it is likely if not certain that any finding of liability based on that defect would place additional and/or different burdens on Defendant's product, necessitating preemption pursuant to *Lohr* and § 360k. *See McMullen,* 421 F.3d at 489 (finding that state and federal requirements are not equivalent if a manufacturer could be held liable under state law while complying with federal requirements). Out of practical necessity and the cold calculus of nationwide regulation, the FDA may be aware of a certain failure rate associated with a medical product and yet approve it. A single instance of such failure, while tragic, does not necessarily amount to a "defect" for purposes of establishing liability that survives preemption. *See Mitchell,* 126 F.3d at 913-15 (upholding summary judgment against plaintiff due to the fact that any judgment premised on product failure which nonetheless complied with the PMA "would necessarily conflict with the determination of the FDA that its requirements rendered the product safe and effective").

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Similarly, it may be premature to conclude that Plaintiff cannot succeed in establishing Defendant's liability by means of the reporting requirements created by the FDCA. Though not entirely clear, Plaintiff seems to suggest that some portion of his claims should survive on a distinct basis by way of these requirements. Plaintiff is correct that after receiving PMA, Class III devices are subject to annual reporting requirements. 21 U.S.C. § 360i. These "post-approval reports" must identify all changes made to the device, 21 C.F.R. § 814.84(b)(1), and summarize unpublished data from any clinical investigations or laboratory studies or reports in scientific literature involving the device "that reasonably should be known to the applicant,"*id.* § 814.84(b) (2) (i-ii). A manufacturer must also report to the FDA any problems in labeling, malfunctions of devices, and incidents in which a device may have caused death or serious injury. *Id.* § 803.50. At this stage it cannot be said that any liability for failing to meet these requirements is precluded. Nonetheless, Plaintiff's vague suggestion that Defendant violated these reporting requirements does not help Plaintiff avoid dismissal of his claims; Plaintiff has not alleged anything in his Complaint that would put Defendant on notice that the basis of Plaintiff's claim was Genzyme's failure to meet the FDA's reporting requirements. *See* Fed.R.Civ.P. 8(a)(2); *Twombly,* 127 S.Ct. at 1964.

**\*6** The burden is on Defendant to show "a conflict between the state and federal regulations of the medical devices which threatens to interfere with a specific federal interest." *Mitchell,* 126 F.3d at 913 (quoting *Hernandez v. Coopervision, Inc.,* 691 So.2d 641 (Fla.Dist.Ct.App.1997)). However, Defendant cannot adequately argue this defense where the Complaint fails to provide the proper level of specificity in its claims. *Brokaw v. Mercer County,* 235 F.3d 1000, 1014 (7th Cir.2000) ("while the federal rules of notice pleading do not require the plaintiff to allege all of the relevant facts, '[f]or fair notice to be given, a complaint must at least include the operative facts upon which a plaintiff bases his claim.'") (quoted cite omitted). To the extent that Plaintiff may eventually succeed in a claim that rests outside those that are preempted by § 360k, it is unclear from the Complaint as it now stands how such a claim would appear. It is not the responsibility

of this Court to restructure Plaintiff's suit so that it alleges claims with some potential for success under the FDCA. *See James Cape & Sons Co. v. PCC Const. Co.,* 453 F.3d 396 (7th Cir.2006) ("District judges are not mind readers, and should not be required to explain to parties whether or how their complaints could be drafted to survive a motion to dismiss."). At this stage, we find only that every aspect of the Complaint in its current form is either preempted pursuant to § 360k, or lacks sufficient clarity to place Defendant on notice of the claims levied against it. Plaintiff has therefore failed to state a claim upon which relief can be granted, and the Complaint must be dismissed in its entirety. Fed.R.Civ.P. 12(b)(6).

Plaintiff has requested the opportunity to amend his complaint in light of some of the issues addressed in the motion to dismiss filings. It is clear that the defense of preemption has highlighted a lack of clarity in the structure of several of Plaintiff's claims that may be redeemable through amendment. At the very least, Plaintiff must provide some allegations regarding the nature of the alleged Seprafilm defect as it relates to the FDA approval process. In the interest of justice, Plaintiff will therefore be permitted the opportunity to amend those counts of the Complaint whose failings have only been made clear as a result of the defense of preemption. *See* Fed.R.Civ.P. 15. Therefore, Counts I, III, IV, and VII-related to implied warranties, strict liability, or negligence-are DISMISSED. The remaining Counts V and VI suffer from additional failings that warrant additional discussion.

### b. *Negligence per se Claim*

Count V of Plaintiff's Complaint alleges that Defendant has violated a statute establishing a standard of care, making Defendant negligent *per se.*(Compl.¶¶ 43, 45, 46.) Under Illinois law, the violation of a statute intended to protect human life or property may establish a prima facie case of negligence.*Kalata v. Anheuser-Busch Cos.,* 144 Ill.2d 425, 434, 163 Ill.Dec. 502, 581 N.E.2d 656 (1991). To prevail on a claim of negligence based on the violation of a statute, a plaintiff must establish that (1) he was a member of the class of persons the statute was designed to protect, (2) his was the type of injury the statute was intended to protect against, and (3) the defendant's violation of the statute was the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                                    Page 6
Slip Copy, 2008 WL 2940811 (N.D.Ill.)

proximate cause of his injury. *Id.*

*7 Plaintiff alleges that Defendant violated the standards of care for labeling and provision of information set by 21 C.F.R. §§ 201.56 and 201.57 and that Defendant violated §§ 301 and 331 of the FDCA. (Compl. ¶¶ 43-46.) Plaintiff also alleges that he, "as a purchaser and consumer of Seprafilm, is within the class of persons the statutes and regulations ... are designed to protect and [his] injury is of the type of harm these statutes are designed to prevent."(*Id.* at ¶ 44, 163 Ill.Dec. 502, 581 N.E.2d 656.) Plaintiff further alleges that his injuries resulted from the violation of the statutes. (*Id.* at ¶ 47, 163 Ill.Dec. 502, 581 N.E.2d 656.)

In response to the Complaint, Defendant contends that the regulations in 21 C.F.R. §§ 201.56 and 201.57 do not apply to medical devices such as Seprafilm. (Def.'s Memo. in Supp. of Mot. to Dismiss 7.) Defendant is correct that these regulations apply to "human prescription drug and biological products," not medical devices. 21 C.F.R. §§ 201.56; 201.57. The statutory regulations for Class III medical devices are defined in § 360 of the FDCA, as Plaintiff now acknowledges. (Pl.'s Resp. to Def.'s Mot. to Dismiss 10-11.) So far as Plaintiff alleges that Defendant has violated 21 C.F.R. §§ 201.56 and 201.57, Count V of Plaintiff's Complaint must be dismissed for failing to place Defendant on notice of the underlying standard of care, an essential element of a negligence *per se* claim. *See Kalata,* 144 Ill.2d at 434, 163 Ill.Dec. 502, 581 N.E.2d 656.

Plaintiff argues in his Response that, because he also alleged that Defendant violated §§ 301 *et seq* and 331, he has pleaded the applicable statutory regulations for medical devices. (*Id.* at 9-10, 163 Ill.Dec. 502, 581 N.E.2d 656.) Plaintiff suggests that he could amend his Complaint to more specifically allege that Defendant violated the regulations for medical device warnings in 21 C.F.R. 801.1 and 801.6 and the requirements for PMA laid out in 21 U.S.C. § 360(e).(*Id.* at 10, 163 Ill.Dec. 502, 581 N.E.2d 656 .) Such amendment may save this count of Plaintiff's Complaint, but must refer specifically to one or more federal requirements to place Defendant on proper notice of the negligence *per se* claim; if Plaintiff merely reiterates FDCA duties within the context of the PMA, its post-approval implementation, or general reporting requirements,

the amended Count V will simply duplicate the claims of Count IV, brought on the basis of overall negligence, and will likely be stricken. *See*Fed.R.Civ.P. 12(f) (enabling a court to strike from a pleading any redundant matter). Therefore, Count V is DISMISSED.

*c. Breach of Express Warranty*

Count VI of Plaintiff's Complaint alleges that Defendant has breached an express warranty made to Plaintiff, on which Plaintiff relied in using Seprafilm. (Compl.¶¶ 49-50.)

According to Section 2-313 of the UCC, express warranties are created by:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> *8 (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

810 ILCS 5/2-313(1)(a)-(c) (West 2006). An express warranty creates an obligation on the part of the seller to deliver goods that conform to the promise, description, or model offered by the seller. *Mydlach v. DaimlerChrysler Corp.,* 226 Ill.2d 307, 320, 314 Ill.Dec. 760, 875 N.E.2d 1047 (2007). The warranty is breached if the goods do not conform. *Id .* at 321, 314 Ill.Dec. 760, 875 N.E.2d 1047.[FN2]

> > FN2. Illinois courts have not been consistent in interpreting the "basis of the bargain" language in § 2-313 to require proof that a plaintiff actually relied on the warranty. *Compare Hasek,* 319 Ill.App.3d at 538 ("The burden is on the seller to establish ... that the affirmations did not become part of the basis of the bargain.), *with Regopoulos*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*v. Waukegan P'ship,* 240 Ill.App.3d 668, 674, 181 Ill.Dec. 384, 608 N.E.2d 457 (1992) (requiring purchaser to prove he "actually relied on the warranty"). In this case, however, the issue is irrelevant because Plaintiff alleges that he relied on the warranty.

Under an express warranty, the language of the warranty itself dictates the obligations of the parties. *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.,* 379 F.Supp.2d 968, 983-84 (N.D.Ill.2005); *Hasek v. DaimlerChrysler Corp.,* 319 Ill.App.3d 780, 788, 253 Ill.Dec. 504, 745 N.E.2d 627 (2001). Express warranty claims are not preempted by § 360k, as they arise from representations made by parties as the basis of the bargain between them rather than requirements imposed under state law. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 525, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Were a court to hold that, under state law, a defendant had breached an express representation made to a plaintiff, such a holding would not interfere with the operation of the PMA process. *Mitchell,* 126 F.3d at 915.

Defendant contends, however, that Plaintiff's Complaint must be dismissed because it does not contain sufficient factual allegations about the nature of the express warranty to state a claim. (Def.'s Mem. in Supp. of Mot. to Dismiss 8-9.) Defendant is correct that Count VI of Plaintiff's Complaint essentially repeats the elements required to prevail on a claim for breach of express warranty-that a warranty forming part of the basis of the bargain between the parties was breached by the defendant. *See Hasek,* 253 Ill.Dec. 504, 745 N.E.2d at 634. Plaintiff alleges that "Genzyme expressly warranted to Plaintiff by and through statements made ... orally and in publications, package inserts, and other written materials ... that Seprafilm was safe, effective, fit and proper for its intended use."(Compl.¶ 49.) Plaintiff then alleges that he relied on the warranty in using the device and that the warranty was false.(*Id.* at ¶ 50, 253 Ill.Dec. 504, 745 N.E.2d 627.)

The Seventh Circuit has not addressed what is required to state a claim based on breach of express warranty. Even before *Twombly,* however, some courts required that plaintiffs at least mention the particular promise or description that allegedly gave rise to an express warranty. For example, in *Johnson*

*v. Brown & Williamson Tobacco Corp.,* a complaint was insufficient when it stated only that the defendant extended an express warranty through its "advertising, marketing and other efforts." 122 F.Supp.2d 194, 206 (D.Mass.2000). Plaintiff has not pointed this Court to any case suggesting that its allegation that Defendant made "statements ... orally and in publications" is sufficient to state a claim for breach of express warranty. The single case Plaintiff's Response cites in defense of Count VI of his Complaint, *Gelormino v. J.C. Penney Co., Inc.,* actually states that "[s]ince J.C. Penney's allegation of a breach of an express warranty is not supported by any facts, such a mere conclusion of law is legally insufficient."No. CV 960067840, 1997 WL 297601, at *3 (Conn.Super.Ct. May 22, 1997). This unpublished case, moreover, is in no way binding on this Court and has only limited persuasive value.

**\*9** Post-*Twombly,* the federal pleading standard requires more than "a formulaic recitation of the elements of a cause of action."*Twombly,* ---U.S. ----, ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). The Seventh Circuit has indicated that the factual content of a claim may be too "sketchy" to put a defendant on notice. *Killingsworth,* 507 F.3d at 619. In this case, Plaintiff has offered nothing more than a formulaic recitation of the elements required to prevail on a claim and has alleged no facts at all that suggest an express warranty existed. Plaintiff has not specified any particular affirmation, promise, description, or sample that formed part of the basis of his bargain with Defendant. He thus fails to put the Defendant on notice as to the substance of his claim. This seems to be precisely the type of claim that is too indefinite to meet the *Twombly* standard. Count VI of Plaintiff's Complaint is therefore DISMISSED.

### CONCLUSION

In any other instance, a claim of a purported defect related to negligence would likely place Defendant on sufficient notice as to survive dismissal. Within the context of § 360k of the FDCA, however, the word "defect" carries much less meaning, as any such "defect" falling within the scope of the PMA essentially carries no weight for purposes of showing liability under state law. Therefore, the ability of Plaintiff to adequately state a claim according to such allegations is limited, and at present it is not clear that any of his claims might survive those limitations.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

During the pendency of a decision on the instant motion to dismiss, Plaintiff amended his complaint. (Docket No. 23.)However, Plaintiff's voluntary amendments as reflected in that document are relatively limited, consisting of: the exclusion of the strict liability count already withdrawn voluntarily; expansion of the general negligence claim to include Defendant's design and manufacture of Seprafilm, as well as its failure to adequately and properly warn "Plaintiff's health care provider purchasing Seprafilm"; changes in the negligence *per se* count to shift its statutory basis; and removal of Count VI for breach of implied warranty. (*See generally id.*)Of these, the only significant change impacting this Court's rationale for granting dismissal involves the new basis for Plaintiff's claim of negligence *per se.*However, this claim is still dependent on the purported "defect" that this Court has already found to be lacking in clarity. In the interest of efficiency this Court will not ask the parties to re-argue a motion to dismiss on this one count before Plaintiff has had the opportunity to resolve the failings identified in this opinion. Therefore, the Amended Complaint does not save Plaintiff's claims, and it is similarly dismissed without prejudice.

For the reasons stated above, Defendant's motion to dismiss is GRANTED. Counts I, II, III, IV, V, VI, and VII of the Complaint are DISMISSED WITHOUT PREJUDICE. Plaintiff's Amended Complaint is also DISMISSED WITHOUT PREJUDICE. Plaintiff will be granted leave to amend his Complaint on or before August 18, 2008 in light of this Opinion.

N.D.Ill.,2008.
Heisner ex rel. Heisner v. Genzyme Corp.
Slip Copy, 2008 WL 2940811 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT "B"

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2592538 (N.D.Ill.)

Page 1

C Colman v. Greenfield
N.D.Ill.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Robert COLMAN, as Trustee of the Robert Colman
Trust Plaintiff,
v.
Roger GREENFIELD, Theodore Kasemir, et al.,
Defendants.
**No. 05 C 3894.**

Oct. 11, 2005.

Vincent E. Lazar, Thomas Patrick Monroe, Jenner &
Block, LLC, Chicago, IL, for Plaintiff.
Alan J. Statman, Statman, Harris Siegel & Eyrich,
LLC, Cincinnati, OH, Alan I. Ehrenberg, Denise De
Fabio Keliuotis, Scott C. Frost, Statman Harris Siegel
& Eyrich LLC, Chicago, IL, for Defendants.

*MEMORANDUM AND ORDER*

MANNING, J.
**\*1** Before the court is defendants' motion to dismiss
under Rule 12(b)(6) certain counts of plaintiff's
complaint for failure to state a claim. For the reasons
stated below, the defendants' motion is denied in part
and granted in part.

I. Background

Plaintiff has filed a ten-count complaint seeking to
enforce a judgment he has obtained against
defendants' affiliates. Specifically, plaintiff alleges
that he has a $954,728.60 judgment (excluding
attorneys' fees, costs, and interest) against Bar Louie
Tempe, Inc. and a $488,604.20 judgment (again
excluding attorneys' fees, costs, and interest) against
defendant Restaurant Development Group ("RDG").
Defendants Roger D. Greenfield and Theodore
Kasemir are officers, directors, and sole shareholders
of both RDG and Bar Louis Tempe. According to the
plaintiff, Greenfield and Kasemir, in order to avoid
making payment on the judgments, caused RDG to
transfer to or for the benefit of the defendants
valuable rights under certain management agreements

for no consideration and thereafter caused RDG to
cease its business operations. Plaintiff seeks to avoid
RDG's alleged fraudulent transfers and to collect the
judgments from the defendants based upon their
improper conduct and failure to operate their business
in accordance with applicable law.

Defendants have moved to dismiss counts II
(avoidance of fraudulent transfers-actual fraud), III
(aiding and abetting actual fraudulent transfers), IV
(avoidance of fraudulent transfers-constructive
fraud), VI (aiding and abetting breach of fiduciary
duties) and VIII (aiding and abetting unlawful
dividend) of the Amended Complaint [FN1] under
Fed.R.Civ.P. 12(b)(6) for failure to state a claim.
Specifically, defendants contend that a cause of
action for aiding and abetting does not exist under
Illinois law and that counts II and IV must be
dismissed because plaintiff has failed to plead fraud
with particularity as required by Fed.R.Civ.P. 9(b).

> FN1. The court dismissed the initial
> complaint without prejudice on July 21,
> 2005, because of jurisdictional-related
> pleading deficiencies.

II. Standard for Motion to Dismiss

The Court may dismiss claims pursuant to Rule
12(b)(6) of the Federal Rules of Civil Procedure if
the plaintiff fails "to state a claim upon which relief
can be granted."Fed.R.Civ.P. 12(b)(6). In considering
a motion to dismiss, the Court accepts as true all
well-pleaded factual allegations and draws all
reasonable inferences in the plaintiff's favor.
McCullah v. Gadert, 344 F.3d 655, 657 (7th
Cir.2003). On a motion to dismiss, the "issue is not
whether a plaintiff will ultimately prevail but whether
the claimant is entitled to offer evidence to support
the claims."Cole v. U.S. Capital, Inc., 389 F.3d 719,
724 (7th Cir.2004) (quoting Scheuer v. Rhodes, 416
U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

III. Analysis

A. *Aiding and Abetting*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2592538 (N.D.Ill.)

Defendants first argue that no separate tort of aiding and abetting law exists in Illinois. *Classic Amenities, Inc. v. Verbeke,* et al., No. 00 C 3326, 2003 WL 21801021, at *2 n. 1 (N.D.Ill. August 1, 2003) ("Ready Care argues that under Illinois law there is no separate tort of aiding and abetting. As pointed out in *Eastern Trading Co. v. Refco, Inc.,* 229 F.3d 617, 623 (7th Cir.2000), this is true.").

**\*2** It is true that the Seventh Circuit stated in *Eastern Trading* that "aiding and abetting is a basis for imposing liability for the tort aided and abetted rather then being a separate tort."*Eastern Trading,* 229 F.3d at 623. In so holding, however, the Seventh Circuit acknowledged that at least two Illinois cases had recognized aiding and abetting as a distinct claim. *Id.* (stating that "a couple of cases have language (weakly) consistent with the separate-tort idea.") (*citing Carter Coal Co. v. Human Rights Comm'n,* 261 Ill.App.3d 1, 198 Ill.Dec. 740, 633 N.E.2d 202, 205 (Ill.App.Ct.1994); *Wolf v. Liberis,* 153 Ill.App.3d 488, 106 Ill.Dec. 411, 505 N.E.2d 1202, 1208 (Ill.App.Ct.1987)). Indeed, cases subsequent to *Eastern Trading* have recognized a separate cause of action for aiding and abetting. *Thornwood, Inc. v. Jenner & Block,* 344 Ill.App.3d 15, 278 Ill.Dec. 891, 799 N.E.2d 756, 759-762 (Ill.App.Ct.2003) (recognizing aiding and abetting fraud and aiding and abetting breach of fiduciary duty); *Hefferman v. Bass,* No. 04 C 5748, 2005 WL 936900, at *3 (N.D.Ill. Apr.15, 2005) (addressing defendant's motion to dismiss an aiding and abetting claim "rooted in intentional behavior" and stating the elements thereof) (*citing Thornwood,* 344 Ill.App.3d 15, 278 Ill.Dec. 891, 799 N.E.2d 756).

Moreover, the District Court for the Southern District of New York recently had occasion to address whether such causes of action existed as distinct and separate claims under Illinois law in *In re Parmalat Securities Litigation,* 377 F.Supp.2d 390, 412-14 (S.D.N.Y.2005). The *In re Parmalat* court noted the conflict between the Seventh Circuit's position in *Eastern Trading* and subsequent cases interpreting Illinois law, such as *Thornwood* and *Hefferman,* and concluded that "[g]iven this trend in the lower courts, the Court cannot agree with defendants that *Thornwood* is an outlier unworthy of the respect that a federal court sitting in diversity must give to the decisions of the Illinois Court of Appeals."*In re Parmalat,* 377 F.Supp.2d at 413-14 (citations

omitted).

This court agrees with the *In re Parmalat* court that Illinois courts recognize separate claims for aiding and abetting. This court acknowledges that it has previously concluded that the "Seventh Circuit has expressly found that the tort of aiding and abetting fraud does not exist in Illinois."*W. United Life Assurance Co. v. Fifth Third Bank,* 02 C 7315, 2003 WL 21800076, at *4 (N.D.Ill. July 29, 2003) (*citing Eastern Trading,* 229 F.3d at 624). However, as the defendants note in their brief, the *Thornwood* case by the Illinois Appellate Court finding a cause of action for aiding and abetting was decided *after* this court's ruling in *Fifth Third Bank.*Further, as the *In re Parmalat* court noted, "the dispute is academic" because the:

Seventh Circuit and the intermediate Illinois courts agree that knowingly assisting another to commit fraud gives rise to civil liability under Illinois law. They simply disagree on whether such conduct should be called fraud or aiding and abetting fraud.

**\*3** *In re Parmalat,* 377 F.Supp.2d at 414;*see Eastern Trading,* 229 F.3d at 623 ("There is nothing to be gained by multiplying the number of torts, and specifically by allowing a tort of aiding and abetting a fraud to emerge by mitosis from the tort of fraud, since it is apparent that one who aids and abets a fraud, in the sense of assisting the fraud and wanting it to succeed, is himself guilty of fraud"). Because the court concludes that a cause of action exists under Illinois law for aiding and abetting, the court denies defendants' motion to dismiss Counts II, VI, and XIII of the amended complaint.

B. *Pleading with Particularity Under Fed.R.Civ.P. 9(b).*

Defendants argue that plaintiff's counts II and IV alleging that the defendants fraudulent transfers should be dismissed because plaintiff has failed to plead these claims with the requisite level of particularity.

According to the Seventh Circuit:

Rule 9(b) provides that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2592538 (N.D.Ill.)

mistake shall be stated with particularity.'Fed.R.Civ.P. 9(b). The circumstances of fraud or mistake include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.

*General Elec. Cap. Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1078 (7th Cir.1997). (citations and internal quotation marks omitted).Rule 9(b) requires that a plaintiff provide the "who, what, when, where, and how: the first paragraph of any newspaper story."*DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990).

The parties dispute how Rule 9(b) is to be applied in a case such as this alleging a fraudulent conveyance. The defendants recite the standards described above and contend that the plaintiff must comply with these standards. *Boyd Machine and Repair Co., Inc., v. D & L Industrial Servs., Inc.,* 100 F.Supp.2d 898, 900 (N.D.Ill.2000); *Russo v. Bache Halsey Stuart Shields, Inc.,* No. 82 C 4219, 1983 U.S. Dist. LEXIS 13555, at *2 (N.D.Ill. Sept.21, 1983); *Brandt v. Jack Levy Associates, Inc.,* 92 C 5075, 1993 WL 95383, at *1-2 (N.D.Ill. Mar.30, 1993). Alternatively, relying on *General Elec.,* the plaintiff argues that the fraudulent transfer claims satisfy the Rule 9(b) requirements as long as they comply with "the more relaxed standard" provided in Form 13 of the Appendix of Forms to the Federal Rules of Civil Procedure. *General Elec.,* 128 F.3d at 1079.

In *General Elec.,* the Seventh Circuit addressed the defendant's argument that the district court erred in concluding that the plaintiff's allegations as to its fraudulent transfer claim satisfied Rule 9(b). In analyzing whether the plaintiff had complied with Rule 9(b), the Seventh Circuit first commented that Fed. Rule of Civ. P. 84 states that "[t]he forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate."*Id.* The Seventh Circuit then referred to Form 13, which provides an example of a complaint on a joint claim to recover debt and to set aside a fraudulent conveyance under Rule 18(b).*Id* .Form 13 requires: 1) an allegation of jurisdiction; 2) a statement of the date and the conditions under which the defendant executed a promissory note [FN2] to the

plaintiff; 3) a statement that the defendant owes the plaintiff the amount; 4) a description of the events surrounding the defendant's conveyance of all of his property to the transfer recipient for the purpose of defrauding plaintiff and delaying the collection of the indebtedness by the plaintiff; [FN3] and 5) the plaintiff's demand of the court.

FN2. The defendants' attempt to distinguish *General Elec.* on the ground that it was a promissory note case whereas the instant case is premised on the collection of a judgment debt is not well-taken. As noted above, Form 13 provides the form for a claim to recover a debt. For purposes of this motion, a debt is a debt regardless of whether it is created by a promissory note or a judgment in court. Given that this court must accept all well-pleaded allegations as true, it accepts plaintiff's allegations that it has obtained two judgments against the defendants upon which it is attempting to execute.

FN3. Under Illinois law, a party may plead a fraudulent conveyance under either a constructive fraud or actual fraud theory. Under the constructive fraud theory, a party may plead that the debtor made the transfer or incurred an obligation "without receiving a reasonably equivalent value in exchange for the transfer or obligation."740 ILCS 160/5 (a)(2). Under an actual fraud theory, the plaintiff must show that the debtor made the transfer with the "actual intent to hinder, delay, or defraud any creditor of the debtor."740 ILCS 160/5(a)(1). The *General Elec.* case dealt with a fraudulent conveyance claim only under a constructive fraud theory whereas in the instant case, the plaintiff alleges a fraudulent conveyance under both theories. However, given that the *General Elec.* court freely substituted the "reasonably equivalent value" element with the "actual intent to hinder or delay" element in its analysis, *General Elec.,* 128 F.3d at 1080 n. 5, this court concludes that the *General Elec.* court's analysis would have been the same under either an actual or constructive fraud theory.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2592538 (N.D.Ill.)

**\*4** In *General Elec.,* the Seventh Circuit concluded that "GE Capital has pled these elements with sufficient particularity."*Id.* at 1080.Specifically, the Seventh Circuit stated that the following allegations satisfied Rule 9(b):

The Fourth Amended Complaint states the following allegations: The promissory note and guaranties for the airplane were executed on December 23, 1991. See Complaint ¶¶ 8-10. Aero defaulted on its payments and GE Capital responded by replevying the airplane and obtaining a judgment against its guarantors (including Rental) for the remaining amount. See id. ¶¶ 12-13.Rental settled an unrelated class action on March 4, 1993. *See id.* ¶ 15.As part of the settlement, Rental "transferred, assigned and conveyed substantially all of its assets to LRC in exchange for a release of pending legal claims against Rental."*Id.* Rental allegedly did not receive from LRC or the limited partnerships any reasonably equivalent value that would be applied to the deficiency due GE Capital. See id. ¶ 37.This transfer rendered Rental insolvent and "effectively precluded Rental from meeting any deficiency obligation to GE Capital for the aircraft under Rental's guaranty."*Id.* ¶ 15.Finally, GE Capital asked the district court 1) to enter a judgment for the deficiency plus prejudgment interest and attorneys' fees, cost and expenses and 2) to declare the transfer of assets from Rental to LRC null and void to the extent of this judgment. *See id.* ¶ 43

Thus, this court does not read *General Elec.* as approving a "relaxed standard"-only that the plaintiff had met the pleading requirements under Rule 9(b) for alleging fraudulent transfers. *Id* . ("This complaint has sufficiently detailed the circumstances surrounding LRC's alleged constructive fraud.").

In the instant case, the plaintiff's fraudulent conveyance claims include the following allegations:

1) jurisdiction (Amended Compl. at ¶¶ 43-45)

2) it obtained judgments against RDG and Bar Louie Tempe, Inc. on February 10, 2005 (Amended Compl. at ¶¶ 1, 56)

3) the defendants owe plaintiff the sum stated (Amended Compl. at ¶¶ 56) ("No portion of the Judgments has been satisfied.")

4) the circumstances surrounding the alleged fraudulent transfer of the debt, specifically that:

- RDG is a restaurant management company which was in the business of providing management services to the restaurants identified in the complaint and was entitled to receive 6% of each of the restauratns net sales (Amended Compl. at ¶¶ 46-48).

- Greenfield and Kasemir are officers and directors of RDG (Amended Compl. at ¶ 46).

- Each of the restaurants for which RDG was providing management services was owned and operated either directly or indirectly by Greenfield and Kasemir (Amended Compl. at ¶ 47).

- RDG guaranteed the real property leases on the restaurants it opened starting in the late 1990's (Amended Compl. at ¶¶ 50-51).

**\*5** - For a number of years, RDG's restaurant management business was profitable and by 2002 RDG was reporting over \$2 million in ordinary income on its federal income tax return (Amended Compl. at ¶ 52).

- In 2002 and 2003 Greenfield and Kasemir closed at least 10 restaurants whose real property leases and/or other obligations had been guaranteed by RDG (Amended Compl. at ¶ 53).

- Due to the guarantees RDG had with respect to the restaurants that had closed, its revenues decreased and by 2003 RDG was insolvent. (Amended Compl. at ¶ 54).

- To avoid paying the claims of RDG's creditors, in 2003 RDG terminated its Management Agreements with each of the restaurants for no consideration and transferred the management rights to that income to or for the benefit of Greenfield, Kasemir, RDG Chicago, the restaurants and/or their affiliates (Amended Compl. at ¶ 55).

In addition to the allegations listed above, the plaintiff notes that just before filing their motion to dismiss, the defendants sent to plaintiff an affidavit by Theodore Kasemir in which he stated that all

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2592538 (N.D.Ill.)

management agreements and all loan agreements by RDG were oral agreements. *See* Exh. A to Plaintiff's Resp. to Motion to Dismiss. As this court has stated, "[w]here the matters alleged are within the opposing parties' knowledge, ..., less detail is required ."*Western United Life Assurance Co. v. Fifth Third Bank,* No. 02 C 7315, 2003 WL 444417, at *3 (N.D.Ill. Feb.21, 2003).

Given that the RDG management and loan agreements were verbal, and information related to the forgiveness of the loans or the transfer of the rights under the management agreements are likely within the specific knowledge of the defendants, less specificity is required. Further, the allegations listed above are at least as particularized (if not more so) than those that were declared sufficient by the Seventh Circuit in *General Electric.*Accordingly, the court finds that the allegations in this case satisfy the pleading requirements of Rule 9(b) with the exception of the allegations in the second sentence of paragraph 55 of the Amended Complaint.

The second sentence of paragraph 55 alleges "on information and belief" that RDG made "other transfers" for no consideration to or for the benefit of Greenfield, Kasemir, RDG Chicago, the Restaurants and/or their affiliates."Allegations based on information and belief usually do not satisfy the particularity requirement in Rule 9(b)."*Id.*However, as noted above, a plaintiff has more leeway when the facts supporting the allegations are in the exclusive knowledge of the defendant. *Id.* Nevertheless, "even when facts are 'inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions,' a claim for fraud 'upon information and belief' is insufficient."*Id.* (citations omitted).

In his response to the motion to dismiss, the plaintiff attempts to support the allegation by asserting that "[i]n light of the Defendants' thirty (or more) fraudulent transfers in the form of terminating the RDG's management agreements for no consideration, it is not a stretch to believe that the Defendants took other deliberate steps to transfer and conceal assets."Resp. at 8. The court has carefully studied the amended complaint and concludes that such a leap in logic does not satisfy the pleading requirements of Rule 9(b). Simply because the plaintiff has stated facts to support the fraudulent conveyances regarding the management agreements does not support a

finding that the defendants must therefore have engaged in other fraudulent conveyances. Because the plaintiff has not provided the court with any facts supporting the allegation that "other" fraudulent transfers occurred, the court strikes this allegation.

IV. Conclusion

**\*6** For the reasons stated herein, the defendants' motion to dismiss [48-1] is denied in part and granted in part. Specifically, to the extent that the plaintiff is attempting to state a fraudulent conveyance claim based on "information and belief" as to "other transfers," that allegation is stricken. The remaining relief in the motion to dismiss is denied.

N.D.Ill.,2005.
Colman v. Greenfield
Not Reported in F.Supp.2d, 2005 WL 2592538 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.